IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CUONG BAO QUAN,

Petitioner,

v.

MARKWAYNE MULLIN, et al.,

Respondents.

CIVIL ACTION
NO. 26-2036

**OPINION**

**Slomsky, J.** **June 3, 2026**

## I.    INTRODUCTION

Presently before the Court is Petitioner Cuong Bao Quan's Petition for a Writ of Habeas Corpus

(Doc. No. 1), Motion for an Order to Show Cause (Doc. No. 4), Motion to Expedite (Doc. No. 5),

and Respondents' Response in Opposition (Doc. No. 6.)  For the reasons that follow, Petitioner

Cuong Bao Quan's Petition (Doc. No. 1) will be denied and the Motion for an Order to Show

Cause (Doc. No. 4) and the Motion to Expedite (Doc. No. 5) will be denied as moot.

## II.    BACKGROUND

### a.  Factual Background

Petitioner Cuong Bao Quan ("Petitioner") is a fifty-year-old noncitizen from Vietnam

who resettled in the United States on June 10, 1994 as a refugee.  (Doc. No. 1 ¶ 18.)  On or about

July 12, 2012, Petitioner adjusted his status to a lawful permanent resident.  (Id. ¶ 20.)  However,

since his entry into the United States, Petitioner has had numerous encounters with law

enforcement, including multiple convictions in New Jersey and Pennsylvania state court.[1]  (Doc.

---

[1]    Petitioner's entire criminal history is set out in full in Respondents' Opposition to the Petition
for Habeas Corpus. (Doc. No. 6, Ex. A.)  Petitioner's criminal history includes six

1

No. 6 at 5.)  By virtue of his myriad encounters with law enforcement, Petitioner has also had multiple interactions with Immigration and Customs Enforcement ("ICE").  (Id.)  In 2016, Petitioner was detained by ICE at the York County Prison in York, Pennsylvania.  (Doc. No. 1 ¶ 21.)  Petitioner subsequently appeared for removal proceedings before the Executive Office for Immigration Review ("EOIR") and was charged as deportable under 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1227(a)(2)(B)(i).  (Id.)  He was ultimately ordered removed to Vietnam on December 16, 2017 by an Immigration Judge.  (Id.)  This order of removal triggered the ninety-day removal period during which ICE "shall remove the [noncitizen] from the United States." (Id. ¶22) (citing 8 U.S.C. § 1231(a)(1)).  However, ICE was unable to deport Petitioner to Vietnam because of the Vietnamese Embassy's refusal to issue travel documents for Petitioner. (Id. ¶ 24; Doc. No. 1 Ex. 3.)

On or about March 7, 2017, the Department of Homeland Security ("DHS") released Petitioner from custody under an Order of Supervision ("OSUP") after determining that he could not be removed to Vietnam.  (Doc. No. 1 ¶ 25.)  Upon release under the OSUP, ICE informed Petitioner he was required to obtain travel documents from the Vietnamese Embassy.  (Id. ¶ 28.) Petitioner subsequently wrote to the Vietnamese Embassy in Washington, D.C. requesting travel documents.  (Id.)  On July 25, 2017, the Vietnamese Embassy replied to Petitioner and informed him that his deportation "must be handled under the provisions of the Agreement between the Government of the Socialist Republic of Viet Nam and the Government of the United States on the acceptance of the return of Vietnamese citizens signed on January 22, 2008."  (Id.)  The letter

---

convictions between 2000 and 2015.  (Id.)  Those convictions include (1) theft by unlawful taking; (2) two separate instances of driving under the influence of alcohol or a controlled substance; (3) manufacture, deliver or possession with intent to manufacture, or deliver a controlled substance, to wit: cocaine or lidocaine; and (4) recklessly endangering another person.  (Id.)

further informed Petitioner that "no travel document will be issued by the Embassy at the request of this deportation." (Id.)

On March 19, 2026 Petitioner appeared at his bi-annual check in with ICE at the ICE Field Office in Philadelphia, Pennsylvania. (Id. ¶ 29.) Upon arrival, Petitioner was detained. (Id. ¶ 30.) DHS subsequently served Petitioner with a Notice of Revocation of Release and transported him to immigration custody at the Federal Detention Center in Philadelphia, Pennsylvania. (Id. ¶ 31.) The Notice of Revocation of Release informed Petitioner that his detention was made pursuant to 8 C.F.R. § 241.13(i) because "[c]ircumstances have changed such that there is a significant likelihood of removal in the foreseeable future." (Id. ¶ 31.) At the time Petitioner filed the Habeas Petition, he was detained at the Federal Detention Center in Philadelphia. (Id.¶ 33.) However as of June 3, 2026, Petitioner has been transferred to the Moshannon Valley ICE Processing Center in Phillipsburg, Pennsylvania.[2]

### b.  Procedural Background

Petitioner filed the Petition for a Writ of Habeas Corpus on March 27, 2026. (Doc. No. 1.) On April 8, 2026, Petitioner filed the Motion for an Order to Show Cause. (Doc. No. 4.) On April 22, 2026, Petitioner also filed the Motion to Expedite the Application for Issuance of an Order to Show Cause and the Petition for a Writ of Habeas Corpus. (Doc. No. 5.) On April 24, 2026, Respondents filed the Response in Opposition to the Petition for a Writ of Habeas Corpus. (Doc. No. 6.) The Petition for Habeas Corpus (Doc. No. 1) is now ripe for disposition. For the reasons that follow, the Petition (Doc. No. 1) will be denied, and the Motion for an Order to Show Cause (Doc. No. 4) and the Motion to Expedite (Doc. No. 6) will be denied as moot.

---

[2]  See U.S. IMMIGR. & CUSTOMS ENF'T, Online Detainee Locator System, https://locator.ice.gov/odls/#/results (last visited May 29, 2026).

### III.    STANDARD OF REVIEW

A federal district court may grant habeas relief when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  At its core, habeas is "a remedy for unlawful executive detention."  Reyes v. J.L. Jamison, et al., No. 26-cv-1324, 2026 WL 970231, at *2 (E.D. Pa. Apr. 9, 2026) (quoting Munaf v. Geren, 553 U.S. 674, 693 (2008)).  Moreover, habeas is "regularly invoked on behalf of noncitizens, particularly in the immigration context."  Id. (quoting I.N.S. v. St. Cyr, 533 U.S. 289, 305 (2011) (superseded by statute on other grounds)). Demonstrating that he or she is being held in violation of the Constitution or federal law is the petitioner's burden to bear.  Id. (citing Walker v. Johnston, 312 U.S. 275, 286 (1941)).  Notably, the Fifth Amendment of the United States Constitution guarantees noncitizens seeking to "forestall or terminate removal proceedings 'an opportunity to be heard at a meaningful time and in a meaningful manner.'"  Serrano-Alberto v. Att'y Gen. U.S., 859 F.3d 208, 213 (3d Cir. 2017) (quoting Dia v. Ashcroft, 353 F.3d 228, 239 (3d Cir. 2003) (en banc)).

### IV.    ANALYSIS

Petitioner alleges that his re-detention violates the Immigration Nationality Act ("INA") and its implementing regulations, the Accardi doctrine, the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), and the Due Process Clause of the Fifth Amendment of the United States Constitution.  However, the crux of Petitioner's argument is predicated on whether Respondents have violated the INA and its implementing regulations, so the Court will address those claims first.

### A.  Petitioner's Re-Detention Comports with 8 C.F.R. § 241.13

"Section 1231 of the INA governs the procedures for detaining an alien who is subject to a final order of removal, providing that 'when an alien is ordered removed, the Attorney General may remove the alien from the United States within a period of [ninety] days,' which is 'referred

4

to as the removal period.'" Reyes, 2026 WL 970231, at *2 (citing 8 U.S.C. § 1231(a)(1)(A)). Upon the end of the ninety-day removal period, § 1231(a)(6) permits the Government to detain certain aliens under certain circumstances not applicable in this case.[3]   8 U.S.C. § 1231(a)(6). However, if the Government does not remove the alien within the ninety-day removal window or detain the alien under 8 U.S.C. § 1231(a)(6), "the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." Reyes, 2026 WL 970231, at *2 (citing 8 U.S.C. § 1231(a)(3)(A)).   Those regulations are codified at 8 C.F.R. § 241.5(a). Dudamel v. Jamison, No. 26-361, 2026 WL 498612, at *4 (E.D. Pa. Feb. 23, 2026).

"When noncitizens who have been ordered removed are released from detention at ICE's discretion, they generally become subject to an OSUP, which provides for their terms and conditions of supervision." Reyes, 2026 WL 970231, at*3 (citing Dudamel v. Jamison, No. 26-cv-361, 2026 WL 498612, at *4 (E.D. Pa. Feb. 23, 2026)).   An OSUP may be revoked in two instances.   First, when the alien "violates the conditions of release," the alien "may be returned to custody," 8 C.F.R. § 241(l)(1),  and second: upon determination of certain individuals within ICE. 8 C.F.R. § 241(l)(2).   More specifically, § 241(l)(2) states in full that:

> Determination by [DHS] shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:

---

[3]   Section 1231(a)(6) authorizes the detention of three categories of persons beyond the 90-day removal period: "noncitizens who are (1) inadmissible; (2) removable as the result of violations of certain status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy; or (3) determined by the Attorney General to be a risk to the community, or to be unlikely to comply with the order of removal. Lim v. Arteta, No. 26-cv-00461, 2026 WL 192490, at*1 (S.D.N.Y. Jan. 26, 2026) (citing 8 U.S.C. § 1231(a)(6)).

(i)     The purposes of release have been served;

(ii)    The alien violates any condition of release;

(iii)   It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or

(iv)    The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241(l)(2).

"Upon revocation, the alien will be notified of the reasons for his or her release or parole." 8 C.F.R. § 241(l)(1). Further, the "alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for the revocation stated in the notification." Id. However, when an alien's OSUP is revoked under 8 C.F.R. § 241(l)(2), multiple courts have found that the procedural safeguards of 8 C.F.R. § 241(l)(1) also apply. See Reyes, 2026 WL 970231, at *3; Dudamel, 2026 WL498612, at*4 n.6; Funes v. Francis, F. Supp. 3d 472, 489 (S.D.N.Y. 2025); Lim v. Artera, No. 26-cv-461, 2026 WL 192490, at *2 (S.D.N.Y. Jan. 26, 2026); Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 163–64 (W.D.N.Y. 2025).

When ICE makes a discretionary decision to revoke a noncitizen's OSUP, such decision cannot be reviewed by a district court. Reyes, 2026 WL 970231, at *3. Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim on or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8. U.S.C § 1252(g); see also Reno v. Am.-Arab-Anti-Discrimination Comm., 525 U.S. 471, 482 (1999). To effectuate a removal order, "the Attorney General must exercise his discretionary power to detain an alien." Tazu v. Att'y Gen. U.S., 975 F.3d 292, 298 (3d Cir. 2020). So, "the decision to revoke a noncitizen's

6

OSUP in order to re-detain him for the purpose of executing his removal order 'clearly falls under the purview of § 1252(g).'" Reyes, 2026 WL 970231, at *3 (quoting Barrios v. Ripa, No. 25-2264, 2025 WL 2280485, at *4 (S.D. Fla. Aug. 8, 2025)).

Thus, the Court cannot review whether Respondents' discretionary decision to revoke Petitioner's OSUP was appropriate but can only consider whether Respondents complied with their own revocation procedures in doing so. See id. (declining to consider whether the Government's decision to revoke a Petitioner's OSUP was proper as 8 U.S.C. § 1252(g) stripped the court of jurisdiction to do so).

Here, Petitioner insists Respondents failed to comply with their own revocation procedures for two reasons: (1) Respondents have failed to determine there is a significant likelihood Petitioner may be removed in the reasonably foreseeable future and (2) Respondents failed to provide Petitioner with notice and an opportunity to respond following his re-detention. (Doc. No. 1 ¶¶ 57–61). The Court will address each contention seriatim.

1. **Respondents Have Sufficiently Determined There is a Significant Likelihood Petitioner May be Removed in the Reasonably Foreseeable Future**

First, Petitioner contends that Respondents have failed to determine there is a significant likelihood Petitioner may be removed to Vietnam in the near future. (Doc. No. 1 ¶ 59.) More specifically, Petitioner highlights that in 2017 the Vietnamese Embassy told Petitioner that travel documents would not be issued to him and "there is nothing to indicate 'changed circumstances'" that would allow Respondents to secure travel documents for Petitioner now. (Id.)

On the other hand, Respondents highlight that in the Notice of Revocation of Supervised Release issued to Petitioner on his March 19, 2026 arrest and Petitioner's OSUP Revocation Worksheet included ICE's Removal and Management Division ("RMD") determination that there is a significant likelihood of removal in the reasonably foreseeable future for citizens of Vietnam

on account of new circumstances.    (Doc. No. 6 at 14.)    Respondents note that these new

circumstances include a 2020 Memorandum of Understanding ("2020 MOU") between the United

States and Vietnam regarding the "acceptance of Vietnamese Citizens who have been ordered

removed by U.S. competent authority and who arrived in the United States before July 12, 1995."

(Id.) (citing Van Nguyen v. Hyde, 788 F. Supp. 144, 148 (D. Mass. 2025)).    Respondents also

highlight that the 2020 MOU outlines the circumstances in which an individual would be eligible

for acceptance to return to Vietnam:

> (1) Has Vietnamese citizenship and does not have citizenship of any
>     other country at the same time;
>
> (2) Has violated U.S. law and has been ordered removed by a U.S.
>     competent authority (and, if sentenced to a prison term, the
>     individual must have completed any term of imprisonment
>     before removal or a U.S. competent authority must have ordered
>     a reduction in the sentence or the individual's release from
>     prison);
>
> (3) Resided in VietNam prior to arriving to the United States and
>     currently has no right to reside in any other country or territory

(Id.) (citing Van Nguyen, 788 F. Supp. at 148).    Respondents likewise point to instances in which

district courts have found that the 2020 MOU "coupled with evidence of the pace and rate of

success with which the United States is now deporting Vietnam citizens to Vietnam constitue[s] a

'change in circumstances' justifying revo[cation] [of] [a] Vietnamese citizen's OSUP and returning

them to custody to effectuate their removal under § 241.13." (Id.)  (citing T.C.T. v. Warden, Stewart

Det. Ctr., No. 25-373, 2025 WL 4648417 at *6 (M.D. Ga. Dec. 22, 2026) (report and

recommendation adopted in part and denied in part by 2026 WL 493471 (M.D. Ga. Feb. 23, 2026);

Nguyen v. Noem, 797 F. Supp. 3d 651 (N.D. Tex. 2025)).

Here, Petitioner's broad assertion that there is no likelihood of removal to Vietnam in the

reasonably foreseeable future because he was told in 2017 that the Vietnamese Embassy would not

issue travel documents is unavailing. As Respondents highlight, the 2020 MOU between the United States and Vietnam applies to Petitioner: (1) he arrived in the United States before July 12, 1995 and has been ordered removed; (2) he has Vietnamese citizenship and does not hold citizenship in any other country; (3) he has violated U.S. laws[4] and has been ordered removed by a competent authority; and (4) he resided in Vietnam prior to arriving in the United States in 1994. And, based on the record before the Court, Petitioner does not appear to have the right to reside in any other country. The applicability of the 2020 MOU to Petitioner, coupled with evidence of the pace and rate of successful deportations to Vietnam within the past year,[5] sufficiently demonstrate a change in circumstances that warrant revoking Petitioner's OSUP and effectuating his removal under § 241.13.

**2. Respondents Appropriately Provided Petitioner with Notice and an Opportunity to Respond**

Second, Petitioner argues that Respondents failed to provide him with notice and an opportunity to respond after his re-detention. (Doc. No. 1. ¶ 60.) In the Petition, dated March 27, 2026, Petitioner stressed that despite being given notice that an interview was scheduled for March 23, 2026, no such interview ever occurred. (Id.) Petitioner further asserts that even if the interview had been provided, it was scheduled four days after Petitioner's March 19, 2026 arrest and thus

---

4   See Doc. No. 6 Ex. A (detailing Petitioner's extensive criminal history, which includes numerous convictions).

5   See T.C.T., 2025 WL 4648414, at *6 (noting that since February 2025, Vietnam has issued travel documents in response to every request by ICE, thus finding a change in circumstances for a Vietnamese citizen, who, like Petitioner, entered the United States before July 12, 1995); Nguyen, 797 F. Supp. 3d 651 ("To the contrary, the undisputed evidence is that the relationship between [the United States and Vietnam] has changed since January 2025, travel documents are being approved, and removals are happening at an increasing rate.")

was not prompt as required by regulation.  (Id.) (citing Martinez v. Jamison, No. 26-00718, 2026 WL 700335, at *4 (E.D. Pa. Mar. 12, 2026)).

Conversely, Respondents maintain that Petitioner was advised of the reasons for revocation as required under 8 C.F.R. § 241.4(l)(2) through service of the Notice of Revocation of Release on March 19, 2026. (Doc. No. 6 at 16; Doc. No. 1-3.)  The Notice further advised Petitioner of his right to an informal interview, which was scheduled for March 23, 2026, at which Petitioner would be given an opportunity to respond to the reasons for revocation and submit evidence in support of release.  (Doc. No. 6 at 16; Doc. No. 1-3.)  The interview ultimately occurred on March 31, 2026.  (Doc. No. 12-1.)  Moreover, Respondents note that Petitioner will be afforded another, more fulsome interview to consider his ongoing detention in no more than three months.  (Doc. No. 6 at 17) (citing 8 C.F.R. § 241.4(l)(3)). Thus, according to Respondents, Petitioner was sufficiently advised of the reasons for revocation, was given notice of an upcoming interview—which was conducted within two weeks of his detention—thereby providing adequate opportunity to gather any pertinent information and evidence in support of release.  (Id.) (citing Reyes, 2026 WL 970231, at *4.

Here, there is nothing in the record to indicate that Petitioner was denied notice and an opportunity to respond to Respondents.  While it is true that Petitioner was not ultimately given an interview until March 31, 2026—two weeks after his detention on March 19, 2026—Petitioner fails to demonstrate how such a delay equates with a denial of notice and an opportunity to respond. Petitioner cites two cases to bolster his position that a delay in providing an interview violates what is required under 8 C.F.R. § 241(l)(1).  (Doc. No. 1 ¶ 60) (citing Dudamel, 2026 WL 498612, at *5 (finding a violation of the notice and opportunity to respond regulation when the Notice states an interview will be provided but one never is); Martinez, 2026 WL 700335, at *6 (same)).  While

10

it is true that at the time Petitioner filed his Petition, he had yet to be provided with an interview, an interview ultimately <u>did</u> occur on March 31, 2026.  (Doc. No. 12-1).  Thus, Petitioner's reliance on <u>Dudamel</u> and <u>Martinez</u> cannot pass muster when applied to the facts presently at issue because unlike the Petitioners in both <u>Dudamel</u> and <u>Martinez</u>, here, Petitioner <u>was</u> given an interview. <u>Compare</u> <u>Dudamel</u>, 2026 WL 498612, at \*5 (highlighting that sixteen days after Petitioner's re-detention, there was nothing in the record to indicate an interview had ever been held), <u>and</u> <u>Martinez</u>, 2026 WL 700335, at \*5 (noting that "ICE had no intention of providing Petitioner with the informal interview what he was entitled to."), <u>with</u> Doc. No. 12-1 (detailing that on March 31, 2026, Petitioner was provided with an informal interview at 11:02 A.M.)  The Court appreciates Petitioner's frustration with the two-week period between his re-detention and informal interview; however, 8 C.F.R. § 241(l)(1) does not prescribe a time limit for what is considered "prompt." Petitioner's dissatisfaction with waiting two weeks is understandable, but neither the controlling statute nor relevant case law indicate that such a delay is tantamount to a violation of 8 C.F.R. § 241(l)(1).

### B.  Petitioner's Re-Detention Comports with the <u>Accardi</u> Doctrine

Petitioner likewise argues that because Respondents violated 8 C.F.R §§ 241.13, 241.4, they violated the <u>Accardi</u> doctrine.  (Doc. No. 1 ¶ 68.)  Petitioner maintains Respondents failed to follow their own regulations by: (1) revoking Petitioner's OSUP; (2) failing to prove removal was reasonably foreseeable; and (3) failing to provide Petitioner with an opportunity to respond.  (<u>Id.</u> ¶ 69.)

Under the <u>Accardi</u> doctrine, federal agencies are required to follow their own regulations and procedures to ensure a fair administrative process.  <u>U.S. ex rel. Accardi v. Shaughnessy</u>, 347 U.S. 260, 268 (1954).

As discussed extensively supra, Respondents complied with the regulatory framework set forth in 8 C.F.R. §§ 241.13, 241.4.  Thus, Petitioner's claim that Respondents violated the Accardi doctrine when they re-detained him fails.

### C. Petitioner's Re-Detention Does Not Violate the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)

Next, Petitioner argues that ICE's revocation of Petitioner's OSUP was arbitrary and capricious under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), ("APA") because (1) it ran counter to the evidence before the agency that he would comply with a demand to appear for removal without detention and (2) no facts or changed circumstances show there is a significant likelihood of removal in the foreseeable future.  (Doc. No. 1 ¶ 73.)

The APA "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts."  Dep't of Homeland Security v. Regents of the Univ. of California, 591 U.S. 1, 16 (2020) (quoting Franklin v. Massachusetts, 505 U.S. 788, 796 (1992)). The APA requires agencies to engage in "reasoned decision making" and permits agency actions to be set aside should they be found to be arbitrary and capricious.  Id. Under this standard of review, a court may not substitute its own judgement for that of an agency.  Id.

Further, the APA establishes a "basic presumption of judicial review [for] one 'suffering [a] legal wrong because of agency action.'"  Id. (quoting Abbott Labs. V. Gardner, 387 U.S. 136, 140 (1967)).  However, that presumption may be rebutted by demonstrating that a relevant statute "precludes review" or "agency action is committed to agency discretion by law."  Id.  The latter is applicable here.

Evidently, whether courts have discretion to review an APA challenge to an OSUP revocation is a novel issue: there is no controlling Third Circuit case law to guide the Court.  However, an apt

analogy noted by the <u>Reyes</u> court is the discretionary decision of immigration judges to grant or deny bond.  2026 WL 970231, at *6.  In <u>Reyes</u>, the court explained:

> There is no on-point Third Circuit guidance on the specific issue of whether courts have jurisdiction to review an APA challenge to an OSUP revocation decision, but in the analogous context of bond hearings, the Third Circuit has held that courts lack jurisdiction to review an immigration judge's discretionary decision to grant or deny bond.  <u>Quinteros v. Warden of Pike Cnty. Corr. Facility</u>, 784 F. App'x 75, 77 (3d Cir. 2019) ("[W]e may not review discretionary decision making involved in denial of a bond[.]") However, the Third Circuit has maintained that while courts may not review an immigration judge's discretionary bond decision, courts "retain the power to review the legal standard underlying immigration officials' actions and to evaluate legal and constitutional claims on that basis." <u>Id.</u>  That is, courts may review "challenges that pertain to the adequacy of process" that a noncitizen received at his or her bond hearing.  <u>Id.</u> at 78.  As previously stated, the Court does not have jurisdiction to review ICE's discretionary decision to revoke Petitioner's OSUP.  See 8 U.S.C. § 1252(g).  Thus, in line with the Third Circuit's holding regarding bond decisions, this Court concludes that in the revocation context, while the Court may not review whether ICE's decision to revoke Petitioner's OSUP was arbitrary and capricious under the APA, the Court will review whether the process through which the OSUP was revoked was arbitrary and capricious under the APA.  <u>See</u> <u>Roe v. Oddo</u>, No. 25-128, 2025 WL 1892445, at *8 (W.D. Pa. July 9, 2025) (finding that because "ICE complied with the applicable laws,…no APA violation exists.")

2026 WL 970231, at *6.  Faced with a nearly identical issue, and using the Third Circuit's guidance as to the grant or denial of bond orders by immigration judges, the <u>Reyes</u> court concluded that because Respondents had complied with the procedural requirements under the INA, there was no APA violation.  <u>Id.</u>

The same is true here.  As discussed <u>supra</u>, Respondents have complied with the regulatory framework under 8 C.F.R. § 241.4(l).  Thus, Petitioner's APA claim fails.

13

**D. Petitioner's Re-Detention Does Not Violate the Due Process Clause of the Fifth Amendment of the United States Constitution**

Finally, Petitioner asserts that the violations of 8 C.F.R. §§ 214.13, 241.4 are per se violations of the United States Constitution because both regulations impose minimum constitutional due process protections.  (Doc. No. 1 ¶ 62.)  Petitioner maintains that his procedural due process rights were violated because he was not provided with prompt notice and an opportunity to respond upon his detention.  (Doc. No. 1 ¶ 65.)  In addition, Petitioner also alleges his substantive due process rights were violated as Respondents cannot show Petitioner is either a flight risk or a danger to the community, nor can Respondents demonstrate that Petitioner's removal is reasonably foreseeable.  (Id. ¶ 64) (relying on Zadvyas v. Davis, 533 U.S. 678, 690–92 (2001)).

Conversely, Respondents submit that Petitioner's detention complies with due process because he was promptly released in 2017 at the conclusion of the ninety-day removal window under 8 U.S.C. § 1231(a)(1)(A), which requires mandatory detention.  (Doc. No. 6 at 21.)  Respondents reiterate that the reason for Petitioner's release in 2017 was because Vietnam was unwilling to issue travel documents to effectuate deportations.  (Id.)  However, Respondents maintain that circumstances have changed: (1) the 2020 MOU between the United States and Vietnam; (2) the pace and rate of successful deportations to Vietnam, thus making it reasonably foreseeable that Petitioner may be removed in the near future; and (3) ICE has the requisite documentation to obtain travel documents for Petitioner.  (Id.)  Respondents also stress that Petitioner has been detained for less than the presumptively reasonable six-moth period set forth in Zadvydas and Petitioner was afforded both notice of the reasons for the revocation of his OSUP as well as the opportunity to contest the revocation of his OSUP with an interview on March 31, 2026.  (Id.; Doc. No. 12-1)

As discussed previously, a noncitizen with a final order of removal is subject to the detention and removal standards outlined in 8 U.S.C. § 1231.  Section 1231 directs that a noncitizen who

14

has been ordered removed, be removed within ninety days of that removal order and that he or she remain detained during the ninety-day period. 8 U.S.C. §§ 1231(a)(1)(A), (a)(2)(A). However, in the event the government is unable to remove an individual during that ninety-day timeframe, the INA allows ICE to release him or her under an order of supervision. 8 U.S.C. § 1231(a)(3).

When removal is not effectuated within the statutorily prescribed ninety-day window, 8 U.S.C. § 1231(a)(6) does not specify precisely how long detention may continue. Johnson v. Artega-Martinez, 596 U.S. 573, 579 (2022). However, in Zadvydas v. Davis, the United States Supreme Court recognized a six-month presumption of reasonableness for periods of detention during the post-removal period. 533 U.S. 678, 701 (2001).

Here, Petitioner has been detained since March 19, 2026 for just over two months—well within the six month "presumptively reasonable" period articulated in Zadvydas. Moreover, in the Response in Opposition, Respondents point out that ICE has obtained Petitioner's birth certificate and necessary information regarding his Vietnamese Passport to seek the necessary travel documents to finalize his removal. (Doc. No. 6 at 19–20.) This information, coupled with the apparent changed relationship between Vietnam and the United States—one in which Vietnam is now accepting deportations—illustrate that ICE may be able to effectuate Petitioner's removal in the reasonably foreseeable future. In addition, Petitioner was provided with notice of the reasons for the revocation of his OSUP and an informal interview to contest the revocation on March 31, 2026.

Thus, for many of the same reasons discussed supra, Petitioner's argument that his due process rights under the United States Constitution fails.

## V.    CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus (Doc. No. 1) will be denied, the Motion for an Order to Show Cause (Doc. No. 4) and Motion to Expedite (Doc. No. 5) will be denied as moot.  An appropriate Order follows.